BILLY/DOT, INC. d/b/a Char-Lee's Bingo *v.* Ron FIELDS

95-228                                           908 S.W.2d 335

Supreme Court of Arkansas
Opinion delivered October 30, 1995

*Mark Cambiano*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Angela S. Jegley*, Senior Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. Appellant Billy/Dot, Inc. d/b/a Char-Lee's Bingo appeals a dismissal of its complaint for a declaratory judgment and for injunctive relief against appellee, Ron Fields, Prosecuting Attorney for the 12th Judicial District. The appeal has no merit, and we affirm.

Billy/Dot made certain factual allegations in its complaint for declaratory and injunctive relief but also posited its interpretation of Act 939 of 1993, now codified at Ark. Code Ann. § 26-52-1501 *et seq.* (Supp. 1993). According to Billy/Dot's complaint, the General Assembly enacted Act 939 in 1993 because there was a dire need for funds for the State Medicaid program. The complaint states that to meet this need, the General Assembly determined that the State should engage in the bingo business to raise revenue or, alternatively, tax bingo operations. To

induce persons knowledgeable about the bingo business to act as tax collectors, Billy/Dot asserted that the General Assembly passed Act 939 so that the State could derive essentially all the profits from a bingo operation, using a 20 percent tax on gross proceeds, and the bingo operator could realize a modest return. Billy/Dot alleged that it was licensed by the State to conduct the State's bingo games in Ft. Smith and to collect the resulting revenues for the State. In 1993, Billy/Dot stated that it remitted approximately $90,000 to the State of Arkansas. To enable it to collect and remit these taxes, Billy/Dot stated that it incurred expenses for its building, equipment, supplies, and personnel, and, as a result, it had a real interest in determining the questions raised in its complaint.

Billy/Dot further alleged that the critical statements made to the prosecuting attorney about its bingo operation were inspired by Oklahoma residents who wanted Arkansas's bingo business. Billy/Dot also asserted that the prosecuting attorney had threatened to take action against it to stop collection of revenues and to impose penalties. In its prayer for relief, Billy/Dot sought (1) a declaration that Act 939 was valid and that the prosecuting attorney had no standing to interfere with the revenue-producing activities of the State, and (2) injunctive relief.

Fields, as Prosecuting Attorney, moved to dismiss the complaint for failure to state a claim pursuant to Ark. R. Civ. P. 12(b)(6). Three reasons were cited in his motion: (1) Billy/Dot lacked standing to bring an action on behalf of the State; (2) chancery court lacked the authority to enjoin the prosecuting attorney from performing his duties; and (3) there was an absence of a justiciable controversy between the parties.

On December 22, 1994, the chancery court entered its order granting Fields's motion to dismiss. In doing so, the court found that Billy/Dot did not state a justiciable cause of action because the parties to the litigation were not proper. Specifically, the court found that the administration of Act 939 was vested in the Director of the State Department of Finance and Administration and that neither the Director nor the State of Arkansas had been joined as a party to the action. The court further found that Act 939, by its express terms, did not purport to legalize bingo and that prosecution of bingo operations was a lawful prosecutorial function.

In determining whether a motion to dismiss was appropriately granted, we treat the facts alleged in the complaint as true and view them in the light most favorable to the party filing the complaint. *Neal* v. *Wilson*, 316 Ark. 588, 873 S.W.2d 552 (1994); *Deitsch* v. *Tillery*, 309 Ark. 401, 833 S.W.2d 760 (1992). In making this determination, we look only to the allegations in the complaint and not to matters outside of the complaint. *Neal* v. *Wilson, supra; Deitsch* v. *Tillery, supra.* Bearing these standards in mind, we turn to Billy/Dot's first point that the chancery court erred in finding that Billy/Dot lacked standing to bring the lawsuit. We initially note that we treat only the *facts* alleged in a complaint as true for purposes of a motion to dismiss but not a party's theories, speculation, or statutory interpretation.

Billy/Dot mischaracterizes what Act 939 of 1993, now codified at Ark. Code Ann. § 26-52-1501 *et seq.* (Supp. 1993), provides. Act 939 does not place the State in the bingo business or provide that bingo operators are "partners" or "agents" of the State for purposes of collecting gross receipts taxes. What Act 939 does is levy a 20 percent tax on the gross receipts of bingo businesses, which revenues are earmarked for the State Medicaid program. It further provides that bingo operations must register with the State and that the taxes must be paid to the State Department of Finance and Administration by the fifteenth of each month. Without question, Act 939 views bingo operators as taxpayers under the Act and not tax collectors.

Moreover, the administration of Act 939 is expressly placed in the hands of the Director of the Department of Finance and Administration:

> (a) The administration of this Act shall be vested in and shall be exercised by the Director [of the Arkansas Department of Finance and Administration] and shall be subject to the provisions of the Arkansas Tax Procedure Act, Arkansas Code §§ 26-18-101 et seq.

> (b) The Director shall promulgate rules and regulations and prescribe forms for the proper enforcement of this Act.

> (c) The tax levied hereunder shall be due and payable

to the Arkansas Department of Finance and Administration in the same manner as provided for by Arkansas Code § 26-52-501, however tax payments under this Act shall be due and payable on the fifteenth of each month.

Ark. Code Ann. § 26-52-1506 (Supp. 1993).

█ In sum, Billy/Dot was not operating its bingo business under the aegis of the State by virtue of Act 939 or licensed by the State to collect taxes in any form or fashion under the Act, and the chancery court was completely correct in finding that Billy/Dot lacked standing to bring the lawsuit. *See Gray* v. *Ragland*, 277 Ark. 232, 640 S.W.2d 788 (1982). The chancery court further did not err in finding that the lawsuit was fatally defective because the Director of the Arkansas Department of Finance and Administration (the true tax collecting authority) and the State were not joined as parties. We agree with the chancery court that the absence of these vitally interested parties, in light of Act 939, renders this action for declaratory relief non-justiciable. *See* Ark. Code Ann. § 16-111-106(a) (1987); *see also Yamauchi* v. *Sovran Bank/Central South*, 309 Ark. 532, 832 S.W.2d 241 (1992).

█ Finally, the chancery court appropriately concluded that it had no authority to enjoin a prosecuting attorney from closing Billy/Dot's bingo operation and from imposing penalties. Our cases are legion that chancery courts will not interfere to enjoin anticipated criminal prosecutions. *See, e.g., Deaderick* v. *Parker*, 211 Ark. 394, 200 S.W.2d 787 (1947); *Gordon* v. *Smith*, 196 Ark. 926, 120 S.W.2d 325 (1938); *Rider* v. *Leatherman*, 85 Ark. 230, 107 S.W. 996 (1908). Billy/Dot advances the argument that it is conducting a business and that its business is a property right which can be protected by chancery court, even when the injunctive relief sought is against criminal prosecution. This issue was raised cryptically before the chancery court. However, because it was touched upon, we choose to address it.

█ While Billy/Dot is correct that a narrow exception has been carved out of the general principle that chancery court will refrain from interfering with prosecutorial functions, that exception is limited to the chancery court's protection of property rights in the form of *lawful* businesses. *See, e.g., City of Texarkana* v. *Brachfield*, 207 Ark. 774, 183 S.W.2d 304 (1944);

*Esskay Art Galleries* v. *Gibbs*, 205 Ark. 1157, 172 S.W.2d 924 (1943); *Local Union No. 313* v. *Stathakis*, 135 Ark. 86, 205 S.W. 450 (1918). Here, there is no question but that playing bingo for money constitutes gambling which is a criminal offense under our statutes, and the chancery court so found. In doing so, the court correctly cited *State* v. *Torres*, 309 Ark. 422, 831 S.W.2d 903 (1992), in its order.

■      Billy/Dot admits that it operates a bingo establishment where money is at risk, but it is wrong in contending that Act 939 legalizes bingo. The Act specifically does not make bingo legal, as is evidenced by its Emergency Clause:

> [T]hat this tax and the requirement for annual registration are not intended to address any question of legality or illegality of the conduct of playing bingo;

Act 939 only provides for taxation of bingo revenues. Because there is no lawful business operation at issue here, there is no valid property right to be protected in this matter.

Affirmed.