### ANSLEY v. THE STATE.

STATUTE CONSTRUED:   *Gaming at dram-shops.*

  The statute (*sec.* 1594 *Gantt's Digest*) does not prohibit the playing of games for amusement or recreation at taverns or dram-shops.

APPEAL from *Howard* Circuit Court.
Hon. H. B. STUART, Circuit Judge.

*Williams & Battle,* for appellant.

Statutes nowhere prohibit playing cards for amusement, save on the Sabbath. *Gantt's Digest,* 1557 to 1570 and 1564, 1621.

*Moore, Attorney General, contra.*

HARRISON, J.  The appellant, a licensed keeper of a dram-shop, was indicted for permitting games of cards to be played in it.

There was no proof that anything was bet upon the games, but the evidence was that they were played for amusement.

Being convicted, he moved for a new trial, upon the

ground that the verdict was not warranted by the evidence, which was refused.

Section 1594, Gantt's Digest, under which the indictment was found, is as follows:

"If any person having a license to keep a tavern or dram-shop, shall knowingly permit any person to play at any game of cards, dice, or other gaming device, within his house, outhouse, curtilage or inclosure, he shall be deemed guilty of a misdemeanor, and on conviction, in addition to the punishment prescribed by law for such offenses, his license shall be canceled."

Bouvier defines gaming to be "a contract between two or more persons, by which they agree to play by certain rules at cards, dice, or other contrivances, and that one shall be the loser and the other the winner." Bishop says: "And even the word gaming, without the prefix unlawful, seems usually to imply something of an unlawful nature, by betting on the sport; being, indeed, ordinarily an ingredient in its signification; or a game of an evil or immoral tendency." And so in England, where a tavern license contained the provision that the party licensed "do not knowingly suffer any unlawful games, or any gaming whatsoever, on the premises," the court held the provision not to be infringed by allowing dominoes to be played there. Said Lord CAMPBELL, C. J.: "Parties may play at a game which is not in itself unlawful, without gaming." And he added: "If money is staked it is gaming, and a publican may be lawfully convicted for that; but this conviction does not state that such was the case." *Bish. Stat. Crimes, sec. 860.* "To constitute gaming," said Judge GREEN, in *The State v. Smith, Meigs, 99,* "there must not only be betting upon the determination of an event, but the course of action to bring about such event must have been originated and commenced with a view to determine

the bet." *Harrison v. The State, 4 Cald., 195; Regina v. Ashton, 16 Eng. L. & Eq., 346.*

The intention of the legislature was, we think, to prevent the playing of games for money, or other stake, in taverns and dram-shops, and to suppress the pernicious vice of gambling—and not to prohibit the playing in such places, of games merely for recreation or amusement.

A new trial should have been granted.

The judgment is reversed, and the cause remanded.